Mr. Herron is here for Paine. Mr. McKee is here for the Southern Association. I know they were all here for that one. They came all the way from Birmingham, huh? All right, Mr. Herron. Good morning. Good morning. May it please the Court. My name is Brent Herron, and I have the privilege today of representing Paine College in this appeal regarding the loss of its accreditation. Accreditation is the lifeblood of institutions of higher education, such as Paine, because accreditors act as gatekeepers for federal financial aid, ensuring that the institutions and their students, 412 in the case of Paine College, have access to such financial aid. As the Fourth Circuit has said, the cost to an educational institution and its students of a denial of accreditation can be steep. An institution denied of accreditation is likely to promptly go out of business. The denial of accreditation to an institution may also diminish the value of a degree earned by their students there in past years. I'm a little confused here, because as I looked at these papers, I thought you got accredited by another institution, but that's not as good an accreditation. You got your federal money, right? Currently, Paine College is a candidate institution with the TRACS Association, but is not accredited by TRACS. So they are a candidate institution and have not received full accreditation yet. Okay. Are you getting your federal money? Currently, students are receiving their federal funds. That is correct. Okay. Is Southern Association a bigger and better accrediting agency? The Southern Association in educational circles would be considered the gold standard in the states in which it has accrediting authority. The regional accreditors versus accrediting bodies like TRACS have a better standard as recognized as far as students being able to transfer to other institutions or using their degrees to go on for further education. Okay. I'm just trying to figure out where we are. The two-year period has passed, right? What two-year period? I thought there was a two-year accreditation period and then you got to get another one. Maybe I got that wrong. Under federal law, there is a two-year waiting period, but currently, because Paine is a candidate with TRACS, that two-year waiting period no longer applies, assuming that Paine could get its full accreditation by TRACS, which has not happened yet. Okay. So it's still the accreditation by the Southern Association is something that you still want? Absolutely, Your Honor. Okay. Absolutely. Let's assume now, for the purpose of your argument, you've got seven minutes left that there is a common law due process right that's applicable to accreditation proceedings. Why don't you tell us why Paine College was denied due process? We were denied due process because of the way they constituted the appeals panel in this case, Your Honor. And what we're alleging is not a substantive, not dealing with the substantive area of the accreditor, but the procedures by which they constituted this committee. And the way that we were denied due process is they allowed a conflicted member to serve in violation of their own procedures. And the district court has already found that we made a culpable claim. And Dr. Luckey was conflicted because he served on a prior panel? He was conflicted because he served on the Board of Trustees at the time they voted to start the process to remove the Paine's accreditation. And under their procedures, that would be a violation. Can you tell us how is Paine able to demonstrate that it would retain its accreditation in the absence of Dr. Luckey's participation? Well, it's not just Dr. Luckey that is the issue. It's also these other individuals. So, in this case, the three— There's Dr. Martin and Dr. Early. You say they were conflicted as well because they were appointed in order to avoid the loss of a quorum, right? They were appointed without figuring out if you could establish a quorum with the duly elected members of the committee. So, let's assume there's a conflict. Okay. Why don't you tell us how Paine is able to establish that it would get its accreditation even if Dr. Luckey didn't serve on the final board and even if Martin and Early were properly appointed? Because if we had a different panel, we don't know what the outcome would have been. If the people that were properly elected had served on the panel, we don't know what they would have determined. And because we presented new evidence related to Paine's financial condition, which is why they lost— I thought the new evidence was basically a formal version of the old evidence. That's correct, but the point is that a new panel, a properly constituted panel, may have reached a different decision. Did you actually show the district court that you had finances that would have qualified under any panel? We made a showing to the district court, which they ignored, that we would have—that we believe we comply with their regulations. Again, I don't think the district court or this court should substitute its judgment for that of the accrediting body. That is for the appeals panel to make a decision about. Okay, but don't you have to get to step one that you had evidence that some panel would have approved your accreditation? We've submitted that to the district court, Your Honor. And it really goes to the issue of damages, and I think that's kind of what, Judge Wilson, I think that's what you're hitting on. And really the issue of damages is if we can show that there is a procedural violation, a violation of the procedures, not a substantive violation, that that in and of itself is the damage that we've suffered. But that procedural violation can be harmless, can it? Well, it can't—it's not harmless because the— But it can be, can it, right? Well, not in—I guess it could be, but not in this particular case where you had over half of the panel who shouldn't have been serving. And we don't know what a properly constituted panel would do. How many members were there on the panel, final panel? There were six members on that panel. And half of those members shouldn't have served. And in the fine mortuary college, the San Juan Batista and Ward's Corner Beauty Academy District Court cases, all of those courts looked at this issue of damages. In fine mortuary held that where the institution had submitted evidence of a rules violation and potential conflicts, summary judgment wasn't appropriate, and the court should have held a trial. And, in fact, the court scheduled a trial in that case, and it settled prior to trial. In San Juan Batista, the court found that having a current member of the accrediting board on the appeals panel, even when that member didn't participate in the revocation decision, was a rule violation and remanded the case back before a new hearing, before a proper appeals panel. Can you tell me, do you have a site to the record where you contested that as of September 16, 2016, you were in financial compliance? I can find the site to the record, Your Honor. All right, well, if you don't know it right now, you can tell me. I will find it when I stand for rebuttal, Your Honor. Okay, so you claimed that you were in financial compliance as of September 16, 2016. That's correct. All right. In addition, perhaps the best analysis is the Ward's Corner Beauty Academy case. In that case, the district court concluded where an institution submits evidence of a procedural violation as opposed to a substantive violation, which is exactly what we have in this case. The institution doesn't have to show damages. That merely being denied that procedure that it was entitled to is sufficient damages, especially when the remedy that they seek is a new hearing. That's all that Payne seeks in this case. All we seek is a new hearing in front of a properly constituted appeals panel. We're not asking this court to substitute its judgment for the accrediting body. We're not asking the district court to substitute its judgment for the accrediting body. What we're asking for is what we were entitled to under the procedures, to have a properly constituted, conflict-free appeals panel. As I understand it, Dr. Luckey didn't vote on the matter when he was a trustee, but he was a trustee. He could have voted. No, he actually voted in the meeting to start the sanctions for Payne College that began this process. Voted twice, as a matter of fact. He testified to that in his deposition. And the other two people, the problem is that they're non-elected members. That's correct. And do you think that they didn't find out whether the other people could have constituted a quorum of elected people? That's correct. They did not contact, didn't perform their ministerial task to contact all of the elected members to try to establish a quorum. Again, all we ask here is for a new hearing. Can I go back to Dr. Luckey again? You may. He was on two different bodies. One, he was a trustee, and then there was another compliance. He served in three different positions. In one year, he was a member of the Board of Trustees when they voted to begin the sanction. In the second year, he served on the Executive Council, which made a recommendation to the board that they continue Payne's warning status, sanction status. He was in that meeting, and he was also in the board meeting when the board took a vote on that particular recommendation and voted to continue the sanction to keep them on warning. Okay. With that, I'll reserve the balance of my time. All right. Thank you, Mr. Herron. We'll hear from Mr. McKee. May it please the Court, my name is Pat McKee. Mr. Herron's position is that a procedural violation is a per se violation of common law due process. That is not the rule in this court. It is not the holding of HIAWASI, which is the only precedent this court has with regard to the review standard for an accrediting body. In HIAWASI, this court held this. We apply the standard of review delineated in COLE and review, quote, only whether the decision of an accrediting agency such as SACS is arbitrary and unreasonable or an abuse of discretion and whether the decision is based on substantial evidence. There is no separate procedural prong of that ruling. What Payne College wants this court to do is to adopt the ruling of the Fourth Circuit, which is the professional massage. The Third, the Fourth, the Fifth, the Sixth, the Seventh, and the District of Columbia Circuits all recognize common law due process in the accreditation process. That's correct, and this court in HIAWASI refused to do so, and that is binding precedent in this court. We just didn't answer the question. That's all we did in HIAWASI. We just decided we weren't going to answer the question. We can answer the question today, can't we? Yes, you can, and it is the wrong way to rule, Your Honor. The common law due process standard that's used primarily by the, that most references are to the one that's articulated by the Fourth Circuit, and that is whether or not there is a fair procedure and whether they followed their procedures. This court in the HIAWASI case says that the only way that a procedural violation should result in a reversal is if the decision is arbitrary and capricious. That is what we ask this court to apply today. Just simply follow the precedent that this court established in HIAWASI. Follow what amounts to an adoption of the APA, the Administrative Practices Act standard, and if there is a procedural violation, as the district court determined the analysis to be, if there is a procedural violation, that procedural violation must be somehow prejudicial to the substance of the decision. That's what we are asking today. It is clear, though, that federal courts have exclusive jurisdiction over these accreditation decisions made by these accrediting agencies, right? Correct. Okay, all right. And that, I think, results in a need for courts to make some kind of ruling as far as the standard to be applied. Suppose you have a totally conflicted panel. Everybody is somehow involved with some other competing institution. You think, okay, he doesn't get a new panel? No, no, no, and that's not our position at all. Well, what's your position? He's saying, he's saying, the district judge determined we had a procedural violation. Then the district judge says, but you haven't shown damages. I took that to mean that they hadn't made a case that another body might have accredited them. Maybe I misunderstood the district court. So he says we made a great case that our finances were in order. Is that true? That is not true. As a matter of fact. Tell me what the record was about what they showed the district court about whether another body would have accredited them. I don't know that they addressed it as whether another body would have accredited them, but what they did was they addressed the dire financial circumstances that they were in. This is found in document 70-2, and in that Payne does not dispute the dire financial circumstances of their situation. Furthermore, Payne makes no argument that the decision to drop the college made over four years by hundreds of educators is substantively wrong. These were the findings of the district court. The district court held that the appeals committee reasonably concluded that the decision should be upheld and is supported by substantial evidence. That is page 30 of the district court decisions, consistent in all the cases, Your Honor. And back to the litany of circuit courts that use the due process standard. So what you're saying is if there were substantial evidence, then it doesn't matter that it was an improperly constituted body. No. Okay, tell me what you're saying. What I'm saying is there has to be substantial evidence, and if there is evidence that a procedural violation would have changed that decision, then that may serve as a basis to overturn the decision. But just simply, as counsel points out, simply a procedural violation, any procedural violation, would be a per se reversal of the accrediting decision. That's not what the law is. Okay, so tell me again what the standard is from your point of view. Procedural violation plus what gets you home? Procedural violation plus what? In my reading of the rule that this court adopted in Hiawassee is that this court reviews only whether the decision of the accrediting agency is arbitrary and unreasonable, and if an abuse of discretion, or whether the decision is based on substantial evidence. We submit it's clearly based on substantial evidence, and the so-called violation of procedures raised by Payne College, they do not result in the decision being arbitrary or capricious. So to Judge Rustani's question before, if you had six members, all conflicted, does having that number of conflicted members, does that not at some point rise to arbitrary and unreasonable? Yes. I believe that at some point, that if there are conflicts like what counsel points out in the San Juan Bautista case and the fine mortuary case, in those situations, in fine mortuary, for example, the competitor, the only competitor of the mortuary in the state participated in the decision. In the San Juan Bautista case, likewise, the president of the accrediting body was involved in the decision and was conflicted out. In those situations, both of those courts applied what I consider to be a wrong reading of the common law due process standard. That is, they decided that this kind of conflict constitutes a per se violation. Now, they might have gotten to the right decision. That is, given those types of conflicts, the decision was arbitrary. But not three out of six conflicted? There are not conflicts in the other two, and the court never held that. If three out of the six members of the appeals counsel are conflicted, why aren't they entitled to a new hearing with a conflict? If they were, if three were conflicted, but the court below did not hold that. As a matter of fact, the court below held that as a matter of law, there is no conflict with regard to Luckey. There has got to be a conflict with regard to Dr. Luckey. He can't serve on the board that put them on warning status and probation status and serve on the appeals counsel. That would be like Judge Thrash serving on this panel. Well, we disagree with that, Your Honor. And here's the reason why. The Board of Trustees of Sac COC is a 77-member board. They serve for, most of them serve for about six years. We require that Board of Trustee members sit on the appeals committee because they have experience. Now, because this process takes, and in this case took, four years, if we said anybody who heard anything about the college at any stage was conflicted out, there would be nobody who could sit on the appeals panel. So what we do is we construe our conflict rule to say, if you participated in the actual adverse decision, the decision to drop, and that's the way the policy reads, the adverse decision, if you participated in that, you are conflicted out. And that is how we have consistently construed the appeals procedure and the conflict rules. Now I'm confused again. He said Dr. Luckey did do that, that he voted on the decision to drop. He did not. Okay. What did he vote on? He voted on several, excuse me. He voted on several lower previous decisions back in 2013 and 2014. The final decision to drop was in 2016. Those decisions, placing the institution on warning and on probation, were not according to our rules. Clear rules attached to the deposition of Carol Luthman, Exhibit 1, the appeals procedure rules, do not say that warning and probation are adverse decisions. They are not appealable decisions. The only appealable decision in this circumstance is a drop from accreditation. Do we owe any deference to the committee in interpreting its procedural rules? We submit that this court does, that you should give deference to our construction of our own rules and that that construction was reasonable. In Carol Luthman's deposition, you will find at page 201 through 202, how we construe our procedural rule that Council for Payne College contends to be a conflict of interest. We have consistently construed the rule to mean only those people who vote on the final decision to drop are conflicted. Otherwise, we just simply could not have an appeals panel that had not had anything to do with the institution because over a period of four years, these members serve for six years at a time, there is bound to be some interaction with the institution at some point. Let me ask you one question. Mr. Heron said that Payne College is in financial compliance. Can you address that? It's not. It hasn't been. It was unable to show that to the district court. The district court found that it was uncontested, that it failed to meet the financial standards of SACCOC, and the only thing that they have done is submitted evidence after the decision to drop that they contend would have changed that decision. But as a matter of fact, the appeals committee reviewed that evidence and said, no, we do not believe this would have changed the result. It's not material. It could not possibly result in a different decision. I wish to also address one thing. I'm going to bother you before you do. No. The other two people, I think there was some factual conflicts, some dispute of fact as to whether there had actually been checking as to whether the elected officials were available. There was a dispute of facts on that. But I was just wondering, I mean, there's got to be some kind of rule of necessity unless you have some procedure for what you do if you don't have the right people. Well, there is simply a rule that says that the chair has authority to appoint substitute members of the appeals committee if a quorum from the elected group is not available. Okay, so there is that rule. So the dispute is whether they checked enough to find out if there were elected people available. Well, that's what Payne College claims. But if you review Carol Luthan's deposition from pages 171 through 207, you will see the very detailed process she went to consult to see if people were available or not. She knows these people. She knew a number of them and knew, for example, with regard to Dr. Bratton, that she had resigned from her institution and moved to England and didn't give a forwarding address. She knew that. She also knew that Debbie Diddle was unavailable because she had told her. There were other people that were found to be inappropriate because they were state conflicts. We don't let people sit on the committee that are from the same state. So the process was a very deliberate one. Carol Luthan went through it. The court found that that process deserves a presumption of regularity. Thank you. All right. Thank you, Mr. McKee. Mr. Herron, you've reserved some time for rebuttal. And this is another point where I was confused. I thought the district court had found that it was uncontested that the college was out of compliance. But then I heard this morning that it was actually not uncontested. We argued in our response to their motion for summary judgment, which we found in document number 81, that they failed to consider the audit because it wasn't verifiable. That is where we made the argument that, in fact, we were in compliance. We were in compliance with the audit that could have been submitted but wasn't submitted. I want to address a couple other. What does the formal audit show? You're saying that the formal audit shows they're in financial compliance. That formal audit would. Well, what's in compliance is up to their standard, right? They have to review that. But what the formal audit would show from 2016 would show that they were in a much better position in 2016 than they were in 2015 and 2014 and 2013 when this whole process started. So that formal audit, in fact, does show that. I want to address a couple of things. But I thought that formal audit showed the same thing as an informal or unverified, whatever you want to call it, not final audit, and that information was before the panel. The informal information was not before the panel, but they argued in front of the panel they shouldn't consider it because it's not verified. They shouldn't consider the unaudited information because it wasn't verified. It needed to be audited. So that's, in fact, what we argued below. Now, with respect to the deference issue, Judge Branch, that you talked about, the Supreme Court in this last term in the Wilkie case said the type of ad hoc changing of positions with respect to how they interpret their rules is not entitled to deference. And, in fact, what they've done is they've interpreted this rule in multiple ways. Carol Luthman, in her deposition, testified, well, you had to vote on probation, but not if you voted on warning. That's not a conflict. Now they're arguing that you have to only vote on if you're actually revoked the accreditation. What the procedure says, what the appeal procedure says, and I just want to read it word for word, and this can be found at docket number 74-6 on page 18. It says that if there is a conflict, if the member voted on the accreditation status of the institution either during the SAC COC board meeting or the meeting on committees on compliance and reports at any time leading to the appealable decision, that starts when they begin the sanction. There's no question about that. In addition to that, in part five of the appeal procedures, and this can be found on docket 74-6, page 22, one of the things, the ministerial task that the administrator has is all appeals committee members with no conflict of interest with the case being appealed will be invited to serve. She has no discretion under the rule of saying, well, you know, this person said one thing or this person says another. There's no discretion. She didn't even make an attempt to contact two people. Is there any evidence in the record in dealing with this appointment of Dr. Early and Dr. Martin, is there any evidence that there were members of the committee that would have been able to serve had they been consulted before these two people were? There's no evidence in the record. We didn't take their depositions. We didn't do that. But the point is that based upon this case being at the point of summary judgment and that she testified that she didn't contact everybody, not only that, the fact that the issue of the appointments, in fact, are belied by the timeline. She contacted six elected members in a span of five minutes, and then eight minutes later started contacting the unelected members, and it wasn't until almost an hour after she had contacted the elected members that she heard from the first member that they could serve. She had no idea when she contacted the unelected members whether she could constitute a quorum with the ones that she had contacted, much less the two that she didn't. So even assuming there's a timing problem here, what evidence is there that there were elected members who were somehow displaced by this process that would have otherwise been able to serve? I don't think there's any evidence of that, but what the evidence is is that she did not fulfill her ministerial task to actually go and contact them, and that procedural violation is what entitles us to a new hearing. But if you can't show us that because of this ministerial violation there are elected members who would have been otherwise eligible to serve who didn't, how is this anything other than a de minimis violation? Well, it's not a de minimis violation in the sense that you had the conflicted member who served in the first place, number one. Let's carve out for a second Dr. Luckey. I'm talking about this timing problem that you're talking about as far as the appointment of Dr. Early and Dr. Martin, that these folks were appointed before she had confirmed that elected members could or could not serve. Correct. But if you haven't produced any evidence that there are elected members who could have served, why is this timing problem anything more than a de minimis violation? Because she still violated the procedure. She still violated Payne's due process rights to a properly constituted appeals panel, and that's what we were entitled to, and it's all we're asking this court to give us. Thank you. All right.